# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Case No.:  _____

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY, and GEICO CASUALTY CO.,

                Plaintiffs,                   **Jury Trial Demand**

    -v-

PREZIOSI WEST/EAST ORLANDO CHIROPRACTIC
CLINIC, LLC, VINCENT A. PREZIOSI, JR., D.C.,
INTEGRITY MEDICAL GROUP, LLC, and
DONALD L. BEHRMANN, M.D.,

                Defendants.

_____/

## COMPLAINT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co.,

GEICO General Insurance Company, and GEICO Casualty Co. (collectively,

"GEICO" or "Plaintiffs"), as and for their Complaint against Defendants Preziosi

West/East Orlando Chiropractic Clinic, LLC ("Preziosi Chiropractic"), Vincent A.

Preziosi, Jr., D.C. ("Preziosi"), Integrity Medical Group, LLC ("Integrity Medical"),

and Donald L. Behrmann, M.D. ("Behrmann")(collectively, the "Defendants"),

hereby allege as follows:

1.     This action seeks to recover more than $3,540,000.00 that the respective

Defendants wrongfully obtained from GEICO by submitting thousands of fraudulent

and unlawful no-fault ("no-fault", "personal injury protection", or "PIP") insurance charges through Defendants Preziosi Chiropractic and Integrity Medical (collectively, the "Clinic Defendants") relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services, including putative initial examinations, follow-up examinations, physical therapy and chiropractic, extracorporeal shockwave therapy, and related services (collectively, the "Fraudulent Services") that purportedly were provided to Florida automobile accident victims who were eligible for coverage under GEICO PIP insurance policies ("insureds").

2.    Additionally, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending, fraudulent, and unlawful PIP claims that the respective Defendants submitted through the Clinic Defendants, because of the fraudulent and unlawful activities described herein.

3.    As set forth herein, the Defendants never were entitled to receive payment on the PIP insurance claims that they submitted to GEICO, because:

(i)    at all relevant times, the Defendants operated in violation of Florida law, including: (a) the licensing and operating requirements set forth in Florida's Health Care Clinic Act, Fla. Stat. §§ 400.990 et seq. (the "Clinic Act"); (b) Florida's False and Fraudulent Insurance Claims Statute, Fla. Stat. § 817.234(7) (the "False and Fraudulent Insurance Claims Statute"); (c) Florida's Physical Therapy Practice Act, Fla. Stat. §§ 486.011-486.172 (the "Physical Therapy Act"); (d) Florida's Patient Brokering Act, Fla. Stat. § 817.505 (the "Patient Brokering Act"); and (e) Florida's Anti-Kickback Statute, Fla. Stat. § 456.054 (the "Anti-Kickback Statute"), thereby rendering the Defendants ineligible to collect PIP insurance benefits in the first instance, and rendering the Defendants' PIP insurance charges noncompensable and unenforceable;

(ii)    the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to

2

pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide genuine patient care to the insureds who purportedly received and were subjected to the Fraudulent Services;

(iii)  in many cases, the Fraudulent Services were never legitimately provided in the first instance;

(iv)  the Defendants' billing for the Fraudulent Services misrepresented and exaggerated the nature, extent, and results of the Fraudulent Services, in order to fraudulently and unlawfully inflate the charges submitted to GEICO;

(v)  the Defendants engaged in an unlawful and fraudulent referral scheme;

(vi)  the Defendants unlawfully billed GEICO for "physical therapy" services that were provided by massage therapists and unlicensed/unsupervised individuals; and

(vii)  the Defendants' billing for the Fraudulent Services misrepresented the identities of the individuals who performed or directly supervised the Fraudulent Services, and the billing was submitted in violation of the requirements set forth in Florida's Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

4.  As such, the Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that were billed through the Clinic Defendants to GEICO and other insurers.

5.  Each charge submitted by the Defendants through the respective Clinic Defendants since at least 2019 has been fraudulent and unlawful for the reasons set forth herein. The charts annexed hereto as Exhibits "1" - "2" set forth large and representative samples of the fraudulent and unlawful claims that have been identified to-date that the Defendants submitted to GEICO by mail through the respective Clinic Defendants.

6.  The Defendants' interrelated fraudulent and unlawful schemes began no

later than 2019 and have continued uninterrupted since that time. As a result of the Defendants' schemes, GEICO has incurred damages of more than $3,540,000.00.

**PARTIES**

**I.      Plaintiffs**

7.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO" or "Plaintiffs") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and issue automobile insurance policies in Florida.

**II.     Defendants**

8.      Defendant Preziosi Chiropractic is a Florida limited liability company with its principal place of business in Orlando, Florida, and is owned and controlled by Preziosi and has him as its member. Preziosi Chiropractic was organized as a Florida limited liability company on or about June 27, 2011. Preziosi Chiropractic falsely purported to qualify for the "wholly owned" exemption from the Clinic Act's health care clinic licensing and medical director requirements, and was used a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

9.       Defendant Preziosi resides in and is a citizen of Florida. Preziosi was licensed to practice chiropractic in Florida on or about June 9, 1983, and Preziosi used Preziosi Chiropractic as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

4

10.     Defendant Integrity Medical is a Florida limited liability company with its principal place of business in Winter Park, Florida, and is owned and controlled by Behrmann and has him as its member. Integrity Medical was organized as a Florida limited liability company on or about April 2, 2015. Integrity Medical falsely purported to qualify for the "wholly owned" exemption from the Clinic Act's health care clinic licensing and medical director requirements, and Integrity Medical was used a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

11.     Defendant Behrmann resides in and is a citizen of Florida. Behrmann was licensed to practice medicine in Florida on or about August 17, 1993, and used Integrity Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and the action is between citizens of different states.

13.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations (RICO) Act).

14.     Additionally, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

15.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Middle District of Florida is the District where one or more of the Defendants reside, and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

## I.     Overview of the Pertinent Laws Governing No-Fault Insurance Reimbursement

16.     Florida has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is set forth in the No-Fault Law, which requires automobile insurers to provide personal injury protection benefits ("PIP Benefits") to insureds.

17.     Under the No-Fault Law, an insured can assign their right to PIP Benefits to health care services providers in exchange for their services. Pursuant to a duly executed assignment, a health care services provider may submit claims directly to an insurance company using the required claim forms – including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form") – in order to receive payment for medically necessary services.

18.     Pursuant to the No-Fault Law, insurers such as GEICO are only required to pay PIP Benefits for "medically necessary" services. At the same time, health care services providers are only eligible to receive PIP Benefits for medically necessary services.

19.     Pursuant to the No-Fault Law, "medically necessary" means:

[A] medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

    (a)    In accordance with generally accepted standards of medical practice;

    (b)    Clinically appropriate in terms of type, frequency, extent, site, and duration; and

    (c)    Not primarily for the convenience of the patient, physician, or other health care provider.

20.    PIP reimbursement for health care services is normally limited to $2,500.00 per insured. However, if a physician, physician assistant, or advanced practice registered nurse determines that an injured person suffered from an "emergency medical condition", health care providers can be reimbursed up to $10,000.00 per insured for medically necessary and lawfully rendered health care services. See Fla. Stat. § 627.736.

21.    Pursuant to the No-Fault Law, an "emergency medical condition" means: "a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) [s]erious jeopardy to patient health[;] (b) [s]erious impairment to bodily functions[; and/or] (c) [s]erious dysfunction of any bodily organ or part."

22.    In order for a health care service to be eligible for PIP reimbursement, it not only must be medically necessary, but also must be "lawfully" provided.

23.    Pursuant to the No-Fault Law, "lawful" or "lawfully" means: "in

substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment."

24.    Thus, health care services providers may not recover PIP Benefits for health care services that were not provided in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment.

25.    By extension, insurers such as GEICO are not required to make any payments of PIP Benefits for health care services that were not provided in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment.

26.    Pursuant to the Clinic Act, a license issued by the Florida Agency for Health Care Administration (the "AHCA") is required in order to operate a clinic in Florida. The Clinic Act defines "clinic" to mean: "an entity where health care services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider."

27.    However, the Clinic Act provides an exemption from the clinic licensing requirements for:

> A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner if one of the owners who is a

licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws. However, a health care practitioner may not supervise services beyond the scope of the practitioner's license. . . .

28.     Therefore, in order for an entity/health care practice to qualify for the "wholly owned" exemption under the Clinic Act, the licensed health care practitioner who "wholly owns" the practice has a continuing obligation to supervise the business activities of the practice and remain legally responsible to ensure that the practice operates in compliance with all federal and state laws, and the practice cannot provide health care services that are beyond the scope of the practitioner-owner's license.

29.     A health care practice that does not qualify for the "wholly owned" exemption, and that does not otherwise have a clinic license, operates unlawfully under Florida law.

30.     Unless a health care practice is operating pursuant to an exemption from the clinic licensing requirements, practices operating in Florida not only must obtain a clinic license, but must also "appoint a medical director or clinic director who shall agree in writing to accept legal responsibility for [certain enumerated] activities on behalf of the clinic."

31.     Among other things, a clinic medical director must be a licensed physician, and must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action."

32.     In this context, a clinic medical director also must "[r]eview any patient

9

referral contracts or agreements executed by the clinic."

33.     In addition, a clinic medical director must "[e]nsure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license," and "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided."

34.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable. A person who knowingly makes or causes to be made an unlawful charge commits theft within the meaning of, and punishable as provided in, [Fla. Stat. §] 812.014."

35.     Thus, pursuant to both the No-Fault Law and the Clinic Act, clinics that operate in violation of the Clinic Act's licensing, medical director, or other operating requirements are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided.

36.     By extension, insurers such as GEICO are not required to make any payments of PIP Benefits to clinics that operate in violation of the Clinic Act's licensing, medical director, or other operating requirements, whether or not the underlying health care services were medically necessary or actually provided.

37.     Under the False and Fraudulent Insurance Claims Statute, it is unlawful

10

for a health care provider to engage in the general business practice of waiving – or failing to make a good-faith effort to collect – co-payments or deductibles from patients with PIP insurance.

38. Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable.

39. Florida's Patient Brokering Act broadly prohibits any person from offering, paying, soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

40. Likewise, Florida's Anti-Kickback Statute prohibits any health care provider from offering, paying, soliciting, or receiving a kickback – directly or indirectly, overtly or covertly, in cash or in kind – for referring or soliciting patients. Violations of the Anti-Kickback Statute also constitute violations of the Patient Brokering Act.

41. Insurers such as GEICO are not required to make any payments of PIP Benefits to health care providers that operate in violation of the Patient Brokering Act or the Anti-Kickback Statute, whether or not the underlying health care services were medically necessary or actually provided.

42. Prior to January 1, 2013, the No-Fault Law permitted health care services providers, including clinics operating pursuant to the Clinic Act, to collect PIP Benefits

for massage therapy or for services performed by massage therapists, so long as –
among other things – the massage therapy or massage therapists' services were
"provided, supervised, ordered, or prescribed by a licensed physician, chiropractor, or
dentist, or was provided in a properly licensed or accredited institutional setting."

43.    However, the No-Fault Law was amended, effective January 1, 2013, to
prohibit reimbursement for massage or for any other services rendered by massage
therapists, regardless of whether the massage therapists work under the supervision of
other licensed health care practitioners.

44.    The No-Fault Law was amended to prohibit reimbursement for massage
or for services performed by massage therapists in response to widespread PIP fraud
involving massage services and massage therapists.

45.    Pursuant to the Physical Therapy Act, massage therapists may not
practice physical therapy, or hold themselves out as being able to practice physical
therapy, unless they have an actual license to practice physical therapy, as opposed to
massage therapy.

46.    The Physical Therapy Act also prohibits unlicensed individuals from
practicing physical therapy. While the Physical Therapy Act does provide an
exception to this rule – which permits a physical therapist to delegate certain patient
care activities to an unlicensed assistant – this exception only applies if the unlicensed
assistant works under the direct supervision of a physical therapist.

47.    Health care practices in Florida may not collect PIP Benefits for: (i)
massage; (ii) any services performed by massage therapists; or (iii) physical therapy

12

services that are performed by unlicensed individuals without direct supervision by a licensed physical therapist. Thus, any such charges submitted by a health care provider are unlawful and noncompensable.

48.    Pursuant to the No-Fault Law, insurers such as GEICO are not required to pay PIP Benefits:

(i)     for any service or treatment that is "upcoded", meaning that the service or treatment is billed using a billing code that would result in payment greater in amount than would be paid by using a billing code that accurately describes the service or treatment performed;

(ii)    to any person who knowingly submits a false or misleading statement relating to the claim or charges; or

(iii)   with respect to a bill or statement that does not substantially meet the billing requirements as set forth in the No-Fault Law.

49.    The No-Fault Law's billing requirements provide – among other things – that all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare and Medicaid Services ("CMS") for the completion of HCFA-1500 forms, as well as the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of current procedural terminology ("CPT") codes that are used to bill for health care services.

50.    In turn, the instructions promulgated by CMS for the completion of HCFA-1500 forms require, among other things, that all HCFA-1500 forms set forth – in Box 31 – the identity of the individual health care practitioner who personally performed or directly supervised the underlying health care services.

51.    To "directly supervise" a service, a supervising health care practitioner

"must be present in the office suite and [be] immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician (or other supervising practitioner) must be present in the room when the procedure is performed."

52.    Additionally, pursuant to the No-Fault Law, in order for a health care service to be eligible for PIP reimbursement, the applicable HCFA-1500 claim form must set forth the professional license number of the provider who personally performed or directly supervised the underlying health care service, in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials."

53.    Insurers are not required to pay PIP Benefits to health care providers that misrepresent, in their billing, the identity of the individual health care practitioners who performed or directly supervised the underlying services.

## II.    The Defendants' Interrelated Fraudulent and Unlawful Schemes

54.    Since at least 2019 and continuing through the present, the Defendants conceived and implemented interrelated fraudulent schemes in which they billed GEICO millions of dollars – or caused GEICO to be billed millions of dollars – for unlawful, medically unnecessary, illusory, and otherwise non-reimbursable services.

55.    In the claims identified in Exhibits "1" - "2", almost none of the insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as the result of the relatively minor automobile accidents they experienced.

56.    Even so, in the claims identified in Exhibits "1" - "2", the Defendants

14

purported to subject virtually every insured to a medically unnecessary course of "treatment" that was provided pursuant to pre-determined, fraudulent protocols designed to maximize the billing that the Defendants could submit to insurers – including GEICO – rather than to treat or provide medically necessary treatment to the insureds who purportedly received and were subjected to this "treatment".

57. The Defendants provided their pre-determined and fraudulent treatment protocols to the insureds in the claims identified in Exhibits "1" - "2" without regard for the insureds' individual symptoms or presentation – or, in most cases, the total absence of any serious continuing medical problems arising from any actual automobile accidents.

58. Each step in the Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, thereby permitting the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each insured.

59. No legitimate physician, chiropractor, clinic, or health care provider would permit the fraudulent treatment and billing protocols designed herein to proceed under their auspices.

60. The Defendants permitted the fraudulent treatment and billing protocols described herein to proceed under their auspices because: (i) the Clinic Defendants were, at all relevant times, operating in violation of the Clinic Act, without legitimate oversight and without medical directors who legitimately fulfilled their statutory duties as medical directors; and (ii) the Defendants sought to profit from the fraudulent and

unlawful billing that they submitted to GEICO and other insurers.

A. **The Unlawful Operation of the Clinic Defendants in Violation of the Clinic Act**

61.     The Clinic Defendants purported to be exempt from the Clinic Act's health care clinic licensure requirements, but operated without valid exemptions. As a result, both Preziosi Chiropractic and Integrity Medical operated as unlicensed health care clinics in violation of the Clinic Act.

62.     The Clinic Defendants were "clinics" within the meaning of the Clinic Act, in that each was an entity "where health care services [w]ere provided to individuals and which tender[ed] charges for reimbursement for such services."

63.     Neither Preziosi Chiropractic nor Integrity Medical had clinic licenses or medical directors.

64.     Instead, Preziosi Chiropractic was owned and operated by Preziosi, and Integrity Medical was owned and operated by Behrmann, and both Clinic Defendants purported to operate under the "wholly owned" exemption from the Clinic Act's licensing, operating, and medical director requirements.

65.     However, Preziosi never legitimately supervised the business activities of Preziosi Chiropractic, inasmuch as Preziosi never conducted legitimate reviews of the billing or treatment records from Preziosi Chiropractic to ensure that the billings were not fraudulent or unlawful, and he never even made any attempt to remedy the fraudulent and unlawful charges submitted through Preziosi Chiropractic, as described herein.

66.    Had Preziosi legitimately supervised the business activities of Preziosi Chiropractic, he would not have permitted Preziosi Chiropractic to operate in the fraudulent and unlawful manner described herein.

67.    Similarly, Behrmann never legitimately supervised the business activities of Integrity Medical, inasmuch as Behrmann never conducted legitimate reviews of the billing or treatment records from Integrity Medical to ensure that the billings were not fraudulent or unlawful, and he never even made any attempt to remedy the fraudulent and unlawful charges submitted through Integrity Medical, as described herein.

68.    Had Behrmann legitimately supervised the business activities of Integrity Medical, he would not have permitted Integrity Medical to operate in the fraudulent and unlawful manner described herein.

69.    Accordingly, neither Preziosi Chiropractic nor Integrity Medical ever qualified for the "wholly owned" exemption from licensure as a "health care clinic" that is set forth in the Clinic Act. Additionally, neither Preziosi Chiropractic nor Integrity Medical ever employed a medical director, and neither Preziosi Chiropractic nor Integrity Medical ever maintained a clinic license.

70.    As a result, both Preziosi Chiropractic and Integrity Medical operated – at all relevant times – in violation of the licensing and operating requirements set forth in the Clinic Act.

**B.    The Preziosi Chiropractic Defendants' Fraudulent and Unlawful Claims for Initial Examinations**

71.    As an initial step in the Defendants' fraudulent treatment and billing protocols, Preziosi Chiropractic and Preziosi (collectively, the "Preziosi Chiropractic Defendants") purported to provide virtually all of the insureds in the claims identified in Exhibit "1" with an initial examination.

72.    As set forth in Exhibit "1", the Preziosi Chiropractic Defendants billed the initial examinations to GEICO under CPT code 99203, typically resulting in a charge of $200.00 for each initial examination they purported to provide.

73.    In the claims for initial examinations identified in Exhibit "1", the charges for initial examinations were fraudulent in that they misrepresented the Preziosi Chiropractic Defendants' eligibility to collect PIP Benefits in the first instance.

74.    In fact, and as set forth herein, the Preziosi Chiropractic Defendants were never eligible to collect PIP Benefits, inasmuch as they operated in pervasive violation of Florida law.

75.    Moreover, and as set forth herein, the charges for initial examinations identified in Exhibit "1" were also fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

**1.    Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

76.    As set forth herein, the No-Fault Law's billing requirements provide that all PIP billing must – among other things – comply with the guidelines promulgated by the AMA in connection with the use of CPT codes.

77.     The primary guidelines promulgated by the AMA for the use of CPT codes are contained in the AMA's CPT Assistant.

78.     Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for an initial patient examination typically represents that the insured presented with problems of moderate severity.

79.     The CPT Assistant provides various clinical examples of moderate severity presenting problems that would support the use of CPT code 99203 to bill for an initial patient examination:

(i)     Office visit for initial evaluation of a 48-year-old man with recurrent low back pain radiating to the leg. (General Surgery)

(ii)    Initial office evaluation of a 49-year-old male with nasal obstruction. Detailed exam with topical anesthesia. (Plastic Surgery)

(iii)   Initial office evaluation for diagnosis and management of painless gross hematuria in new patient, without cystoscopy. (Internal Medicine)

(iv)    Initial office visit for evaluation of a 13-year-old female with progressive scoliosis. (Physical Medicine and Rehabilitation)

(v)     Initial office visit with couple for counseling concerning voluntary vasectomy for sterility. Spent 30 minutes discussing procedure, risks and benefits, and answering questions. (Urology)

80.     Accordingly, pursuant to the CPT Assistant, the moderate severity presenting problems that could support the use of CPT code 99203 to bill for an initial patient examination typically are either chronic and relatively serious problems, acute problems requiring immediate invasive treatment, or issues that legitimately require physician counseling.

81.     By contrast, to the extent that the insureds in the claims identified in

Exhibit "1" had any presenting problems at all as the result of their typically minor automobile accidents, the problems virtually always were minimal severity soft tissue injuries such as sprains and strains.

82.    For instance, and in keeping with the fact that the insureds in the claims identified in Exhibit "1" either had no presenting problems at all as the result of their typically minor automobile accidents, or else had problems of minimal severity, in the substantial majority of the claims identified in Exhibit "1", the insureds did not seek treatment at any hospital as the result of their accidents.

83.    To the limited extent that the insureds in the claims identified in Exhibit "1" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis, and were discharged with nothing more serious than a minor soft tissue injury diagnosis such as a sprain or strain.

84.    Furthermore, in most of the claims identified in Exhibit "1", the contemporaneous police reports indicated that the insureds' vehicles were functional following the accidents, and that no one was seriously injured in their accidents – or injured at all.

85.    Even so, in the claims for initial examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely billed for their putative initial examinations using CPT code 99203, and thereby falsely represented that the insureds presented with problems of moderate severity.

86.    For example:

(i)    On August 18, 2019, an insured named LR was involved in an

automobile accident. The contemporaneous police report indicated that there was minor damage to LR's vehicle, that there was minor damage to the other vehicle, and that LR's vehicle was drivable following the accident. The police report further indicated that LR was not injured and that LR did not complain of any pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of LR at Preziosi Chiropractic on August 23, 2019, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ii)    On January 28, 2020, an insured named AL was involved in an automobile accident. The contemporaneous police report indicated that AL was not injured and that AL did not complain of any pain at the scene. In keeping with the fact that AL was not seriously injured, AL did not visit any hospital emergency room following the accident. To the extent that AL experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of AL at Preziosi Chiropractic on January 30, 2020, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iii)    On February 5, 2021, an insured named CV was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to CV's vehicle, that there was minor damage to the other vehicle, and that CV's vehicle was drivable following the accident. The police report further indicated that CV was not injured and that CV did not complain of any pain at the scene. In keeping with the fact that CV was not seriously injured, CV did not visit any hospital emergency room following the accident. To the extent that CV experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of CV at Preziosi Chiropractic on February 8, 2021, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iv)    On June 15, 2021, an insured named ML was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to ML's vehicle, that there was minor damage to the other vehicle, and that ML's vehicle was drivable following the accident. The police report further indicated that ML was not injured and that ML did not complain of any pain at the scene. In keeping with the fact that ML was not seriously injured, ML did not visit any hospital emergency room following the accident. To the extent that ML experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of ML at Preziosi Chiropractic on June 23, 2021, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(v)    On August 31, 2021, an insured named SC was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to SC's vehicle, that there was minor damage to the other vehicle, and that SC's vehicle was drivable following the accident. The police report further indicated that SC was not injured and that SC did not complain of any pain at the scene. In keeping with the fact that SC was not seriously injured, SC did not visit any hospital emergency room following the accident. To the extent that SC experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of SC at Preziosi Chiropractic on September 8, 2021, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(vi)    On October 15, 2021, an insured named NB was involved in an automobile accident. The contemporaneous police report indicated that NB was not injured and that NB did not complain of any pain at the scene. In keeping with the fact that NB was not seriously injured, NB did not visit any hospital emergency room following the accident. To the extent that NB experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of NB at Preziosi Chiropractic on April 8, 2022, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate

severity.

(vii)     On September 12, 2022, an insured named MB was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to MB's vehicle, that there was minor damage to the other vehicle, and that MB's vehicle was drivable following the accident. The police report further indicated that MB was not injured and that MB did not complain of any pain at the scene. In keeping with the fact that MB was not seriously injured, MB did not visit any hospital emergency room following the accident. To the extent that MB experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of MB at Preziosi Chiropractic on September 23, 2022, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(viii)    On December 1, 2022, an insured named IA was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to IA's vehicle, that there was minor damage to the other vehicle, and that IA's vehicle was drivable following the accident. The police report further indicated that IA was not injured and that IA did not complain of any pain at the scene. In keeping with the fact that IA was not seriously injured, IA did not visit any hospital emergency room following the accident. To the extent that IA experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of IA at Preziosi Chiropractic on December 16, 2022, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ix)      On December 23, 2022, an insured named BG was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to BG's vehicle, that there was minor damage to the other vehicle, and that BG's vehicle was drivable following the accident. The police report further indicated that BG was not injured and that BG did not complain of any pain at the scene. In keeping with the fact that BG was not seriously injured, BG did not visit any hospital emergency room following the accident. To the extent that BG experienced any health problems at all as the result of the accident, they

were of minimal severity. Even so, following a purported initial examination of BG at Preziosi Chiropractic on December 28, 2022, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(x)   On May 25, 2024, an insured named SP was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to SP's vehicle, that there was minor damage to the other vehicle, and that SP's vehicle was drivable following the accident. The police report further indicated that SP was not injured and that SP did not complain of any pain at the scene. In keeping with the fact that SP was not seriously injured, SP did not visit any hospital emergency room following the accident. To the extent that SP experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of SP at Preziosi Chiropractic on May 29, 2024, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

87.   These are only representative examples. In the claims for initial examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants virtually always falsely represented that the insureds presented with problems of moderate severity, when, in fact, the insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the limited extent that the insureds had any presenting problems at all as the result of their typically minor automobile accidents.

88.   In the claims for initial examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants virtually always falsely represented that the insureds presented with problems of moderate severity in order to create a false basis for their charges for examinations billed under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations involving

24

presenting problems of low severity, minimal severity, or no severity.

89.     In the claims for initial examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants also virtually always falsely represented that the insureds presented with problems of moderate severity in order to create a false basis for the laundry list of other Fraudulent Services that the Preziosi Chiropractic Defendants purported to provide to the insureds, including medically unnecessary follow-up examinations, physical therapy and chiropractic, extracorporeal shockwave therapy, and related services.

**2.     Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

90.     What is more, in every claim identified in Exhibit "1" for initial examinations billed under CPT code 99203, the Preziosi Chiropractic Defendants misrepresented and exaggerated the total amount of time that the examining practitioners spent performing the putative initial examinations.

91.     Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for an initial examination represents that the physician or other practitioner who performed the examination spent at least 30 minutes of time performing the examination.

92.     When the Preziosi Chiropractic Defendants billed for their purported initial examinations using CPT code 99203, they represented that the examining practitioners spent at least 30 minutes of time performing the examinations.

93.     In fact, in the claims for initial examinations identified in Exhibit "1", neither Preziosi nor any other examining health care practitioner spent even 15

minutes of time performing the examinations – much less 30 minutes – to the extent that the examinations were actually conducted at all.

94.     In keeping with the fact that the initial examinations in the claims identified in Exhibit "1" did not involve more than 15 minutes of time performing the examinations, the examining practitioners used templated forms in purporting to conduct the examinations.

95.     All that was required to complete the templated forms was a brief patient interview and a perfunctory physical examination of the insureds, consisting of a check of some of the insureds' vital signs and a limited check of the insureds' systems.

96.     These interviews and examinations did not require Preziosi or any other examining health care practitioner to spend more than 15 minutes of time performing the putative initial examinations.

97.     In the claims for initial examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely misrepresented the amount of time that was spent in conducting the initial examinations, because lengthier examinations that are billable under CPT code 99203 are reimbursable at higher rates than examinations that take less time to perform.

3.  **Misrepresentations Regarding the Extent of Medical Decision-Making During the Initial Examinations**

98.     Pursuant to the CPT Assistant, there are four potential levels of medical decision-making in which a health care practitioner can engage in connection with an initial patient examination, namely straightforward, low complexity, moderate

complexity, and high complexity medical decision-making.

99.   Pursuant to the CPT Assistant, the complexity of medical decision-making is measured by: (i) the number of diagnoses and/or the number of management options to be considered; (ii) the amount and/or complexity of medical records, diagnostic tests, and other information to be considered; and (iii) the risk of complications, morbidity, and mortality, as well as co-morbidities associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options.

100.   Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for a patient examination represents that the physician or health care practitioner who performed the examination engaged in legitimate "low complexity" medical decision-making in connection with the examination.

101.   For an initial patient examination to legitimately entail "low complexity" medical decision-making, the examination typically must, among other things: (i) involve review and analysis of some of the patient's medical records or information regarding the patient's history obtained from an independent historian; and (ii) there typically must be at least some real risk of morbidity associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options for the patient.

102.   As set forth above and in Exhibit "1", the Preziosi Chiropractic Defendants billed for virtually all of their putative initial patient examinations using CPT code 99203, and thereby falsely represented that the examining practitioners

27

engaged in genuine low complexity medical decision-making in connection with the initial examinations.

103.    In fact, to the extent that the insureds in the claims identified in Exhibit "1" had any presenting problems at all as the result of their typically minor automobile accidents, the problems virtually always were minor soft tissue injuries such as sprains and strains.

104.    The diagnosis and treatment of these minor soft tissue injuries did not require any legitimate low complexity medical decision-making.

105.    First, in the Defendants' claims for initial examinations identified in Exhibit "1", the initial examinations did not involve the retrieval, review, or analysis of any significant amount of medical records, diagnostic tests, or other information.

106.    When the insureds in the claims identified in Exhibit "1" presented to the Preziosi Chiropractic Defendants for "treatment", they did not arrive with any significant medical records.

107.    Furthermore, prior to the initial examinations, the Preziosi Chiropractic Defendants and their associates did not request any significant medical records from any other providers regarding the insureds, nor did they provide, review, or analyze any complex diagnostic tests or other information in connection with the examinations.

108.    Second, in the Preziosi Chiropractic Defendants' claims for initial examinations identified in Exhibit "1", there was no risk of significant complications or morbidity – much less mortality – from the insureds' minor soft tissue complaints,

to the extent that the insureds had any complaints arising from their typically minor automobile accidents at all.

109.    Nor, by extension, was there any risk of significant complications, morbidity, or mortality from the diagnostic procedures or treatment options provided by the Preziosi Chiropractic Defendants during the initial examinations, to the extent that the Preziosi Chiropractic Defendants provided any such diagnostic procedures or treatment options in the first instance.

110.    In virtually all of the claims identified in Exhibit "1", any diagnostic procedures and treatment options that the Preziosi Chiropractic Defendants recommended or provided during the initial examinations were limited to a series of medically unnecessary follow-up examinations, physical therapy and chiropractic, extracorporeal shockwave therapy, and related services – none of which was health- or life-threatening if properly administered.

111.    Third, in the claims for initial examinations identified in Exhibit "1", the examining practitioners did not consider any significant number of diagnoses or treatment options for insureds during the initial examinations.

112.    Rather, to the extent that the initial examinations were conducted in the first instance, the examining practitioners – at the direction of the Preziosi Chiropractic Defendants – provided a substantially similar, pre-determined, and false series of soft tissue injury "diagnoses" for each insured, and prescribed a virtually identical course of medically unnecessary treatment for each insured.

113.    Specifically, in almost every instance in the claims identified in Exhibit

"1", during the initial examinations, the insureds did not report any serious continuing medical problems that legitimately could be traced to an underlying automobile accident.

114.   Even so, the examining practitioners – at the direction of the Preziosi Chiropractic Defendants – prepared initial examination reports in which they provided false, boilerplate sprain/strain and similar soft tissue "diagnoses" to virtually every insured.

115.   Then, based upon these artificial "diagnoses", the examining practitioners – at the direction of the Preziosi Chiropractic Defendants – directed the insureds to undergo a series of medically unnecessary follow-up examinations, physical therapy and chiropractic, extracorporeal shockwave therapy, and related services.

116.   Contrary to the Preziosi Chiropractic Defendants' false diagnoses, the insureds in the claims identified in Exhibit "1" did not legitimately suffer from any significant health care problems at all as the result of their typically minor automobile accidents.

117.   For example:

(i)     On October 6, 2019, an insured named AJ was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to AJ's vehicle, that there was minor damage to the other vehicle, and that AJ's vehicle was drivable following the accident. The police report further indicated that AJ was not injured and that AJ did not complain of any pain at the scene. In keeping with the fact that AJ was not seriously injured, AJ did not visit any hospital emergency room following the accident. To the extent that AJ experienced any health problems at all as a result of the accident, they were of minimal severity.

On October 9, 2019, AJ purportedly received an initial examination at Preziosi Chiropractic. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of the Preziosi Chiropractic Defendants – provided AJ with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither AJ's presenting problems nor the treatment plan provided to AJ by the Preziosi Chiropractic Defendants presented any risk of significant complications, morbidity, or mortality. On the contrary, AJ did not need any significant treatment at all as a result of the accident, and the treatment plan provided by the Preziosi Chiropractic Defendants consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AJ. Even so, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(ii)   On December 10, 2019, an insured named SS was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to SS's vehicle, that there was minor damage to the other vehicle, and that SS's vehicle was drivable following the accident. The police report further indicated that SS was not injured and that SS did not complain of any pain at the scene. In keeping with the fact that SS was not seriously injured, SS did not visit any hospital emergency room following the accident. To the extent that SS experienced any health problems at all as a result of the accident, they were of minimal severity. On December 18, 2019, SS purportedly received an initial examination at Preziosi Chiropractic. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of the Preziosi Chiropractic Defendants – provided SS with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither SS's presenting problems nor the treatment plan provided to SS by the Preziosi Chiropractic Defendants presented any risk of significant complications, morbidity, or mortality. On the contrary, SS did not need

any significant treatment at all as a result of the accident, and the treatment plan provided by the Preziosi Chiropractic Defendants consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to SS. Even so, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(iii)   On June 15, 2021, an insured named ML was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to ML's vehicle, that there was minor damage to the other vehicle, and that ML's vehicle was drivable following the accident. The police report further indicated that ML was not injured and that ML did not complain of any pain at the scene. In keeping with the fact that ML was not seriously injured, ML did not visit any hospital emergency room following the accident. To the extent that ML experienced any health problems at all as a result of the accident, they were of minimal severity. On June 23, 2021, ML purportedly received an initial examination at Preziosi Chiropractic. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of the Preziosi Chiropractic Defendants – provided ML with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither ML's presenting problems nor the treatment plan provided to ML by the Preziosi Chiropractic Defendants presented any risk of significant complications, morbidity, or mortality. On the contrary, ML did not need any significant treatment at all as a result of the accident, and the treatment plan provided by the Preziosi Chiropractic Defendants consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to ML. Even so, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(iv)   On August 6, 2022, an insured named SF was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to SF's vehicle, that there was minor damage to the other vehicle, and that SF's vehicle was drivable following the accident. The police report further indicated that SF was not injured and that SF did

not complain of any pain at the scene. In keeping with the fact that SF was not seriously injured, SF did not visit any hospital emergency room following the accident. To the extent that SF experienced any health problems at all as a result of the accident, they were of minimal severity. On August 16, 2022, SF purportedly received an initial examination at Preziosi Chiropractic. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of the Preziosi Chiropractic Defendants – provided SF with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither SF's presenting problems nor the treatment plan provided to SF by the Preziosi Chiropractic Defendants presented any risk of significant complications, morbidity, or mortality. On the contrary, SF did not need any significant treatment at all as a result of the accident, and the treatment plan provided by the Preziosi Chiropractic Defendants consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to SF. Even so, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(v)     On November 16, 2022, an insured named WL was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to WL's vehicle, that there was minor damage to the other vehicle, and that WL's vehicle was drivable following the accident. The police report further indicated that WL was not injured and that WL did not complain of any pain at the scene. In keeping with the fact that WL was not seriously injured, WL did not visit any hospital emergency room following the accident. To the extent that WL experienced any health problems at all as a result of the accident, they were of minimal severity. On November 17, 2022, WL purportedly received an initial examination at Preziosi Chiropractic. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of the Preziosi Chiropractic Defendants – provided WL

with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither WL's presenting problems nor the treatment plan provided to WL by the Preziosi Chiropractic Defendants presented any risk of significant complications, morbidity, or mortality. On the contrary, WL did not need any significant treatment at all as a result of the accident, and the treatment plan provided by the Preziosi Chiropractic Defendants consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to WL. Even so, the Preziosi Chiropractic Defendants billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

118. These are only representative examples. In the claims for initial examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely and falsely represented that the examinations involved legitimate low complexity medical decision-making, when, in fact, they did not.

119. There are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

120. An individual's age, height, weight, general physical condition, location within the vehicle, and location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

121. As set forth above, in the claims identified in Exhibit "1", virtually all of the insureds whom the Preziosi Chiropractic Defendants purported to treat were involved in relatively minor accidents.

122. It is improbable that any two or more insureds involved in any one of the typically minor automobile accidents in the claims identified in Exhibit "1" would suffer substantially similar injuries as the result of their accidents, or require a substantially similar course of treatment.

123.   It is even more improbable – to the point of impossibility – that this kind of pattern would recur with great frequency within the cohort of patients treating at Preziosi Chiropractic, with numerous instances in which two or more patients who had been involved in the same accident supposedly presented with substantially similar symptoms warranting substantially similar diagnoses and treatment.

124.   Even so, in keeping with the fact that the Preziosi Chiropractic Defendants' putative "diagnoses" were pre-determined and false, and in keeping with the fact that their putative initial examinations involved no actual medical decision-making at all, the examining practitioners at Preziosi Chiropractic – at the direction of the Preziosi Chiropractic Defendants – frequently issued substantially similar, false "diagnoses", on or around the same date, to more than one insured involved in a single accident, and recommended a substantially similar course of medically unnecessary treatment to the insureds, despite the fact that each of the insureds was differently situated.

125.   For example:

(i)   On February 22, 2019, three insureds – JL, JQ, and JM – were involved in the same automobile accident. Thereafter, three insureds presented at Preziosi Chiropractic for initial examinations on the exact same date, February 22, 2019. JL, JQ, and JM: (a) were different ages; (b) were in different physical conditions; (c) were located in different positions in the vehicle; and (d) experienced the impact from different positions in the vehicle. To the extent that JL, JQ, and JM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, the Preziosi Chiropractic Defendants provided JL, JQ, and JM with substantially similar, false soft tissue injury "diagnoses" and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(ii)     On July 27, 2020, three insureds – MM, JM, and GM – were involved in the same automobile accident. Thereafter, all three insureds presented at Preziosi Chiropractic for initial examinations on the exact same date, July 30, 2020. MM, JM, and GM: (a) were different ages; (b) were in different physical conditions; (c) were located in different positions in the vehicle; and (d) experienced the impact from different positions in the vehicle. To the extent that MM, JM, and GM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, the Preziosi Chiropractic Defendants provided MM, JM, and GM with substantially similar, false soft tissue injury "diagnoses" and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(iii)    On April 7, 2021, six insureds – AG, CG, OG, AO, AO, and ZV – were involved in the same automobile accident. Thereafter, all six insureds presented at Preziosi Chiropractic for initial examinations on the exact same date, April 12, 2021. AG, CG, OG, AO, AO, and ZV: (a) were different ages; (b) were in different physical conditions; (c) were located in different positions in the vehicle; and (d) experienced the impact from different positions in the vehicle. To the extent that AG, CG, OG, AO, AO, and ZV suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, the Preziosi Chiropractic Defendants provided AG, CG, OG, AO, AO, and ZV with substantially similar, false soft tissue injury "diagnoses" and recommended a substantially similar course of medically unnecessary treatment to all six of them.

(iv)    On November 27, 2023, three insureds – TM, QJ, and TB – were involved in the same automobile accident. Thereafter, all three insureds presented at Preziosi Chiropractic for initial examinations on the exact same date, November 27, 2023. TM, QJ, and TB: (a) were different ages; (b) were in different physical conditions; (c) were located in different positions in the vehicle; and (d) experienced the impact from different positions in the vehicle. To the extent that TM, QJ, and TB suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, the Preziosi Chiropractic Defendants provided TM, QJ, and TB with substantially similar, false soft tissue injury "diagnoses" and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(v)     On February 1, 2024, three insureds – GC, GC, and EC – were involved in the same automobile accident. Thereafter, all three insureds presented

at Preziosi Chiropractic for initial examinations on the exact same date, April 3, 2024. GC, GC, and EC: (a) were different ages; (b) were in different physical conditions; (c) were located in different positions in the vehicle; and (d) experienced the impact from different positions in the vehicle. To the extent that GC, GC, and EC suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, the Preziosi Chiropractic Defendants provided GC, GC, and EC with substantially similar, false soft tissue injury "diagnoses" and recommended a substantially similar course of medically unnecessary treatment to all three of them.

126.    These are only representative examples. In the claims for initial examinations that are identified in Exhibit "1", the Preziosi Chiropractic Defendants frequently issued substantially similar "diagnoses" – on or around the same date – to more than one insured involved in a single accident, and recommended a substantially similar course of medically unnecessary "treatment" to the insureds, despite the fact that each of the insureds was differently situated and, in any case, did not require the treatment.

127.    The Preziosi Chiropractic Defendants routinely caused these false "diagnoses" to be inserted into their initial examination reports in order to create the false impression that the initial examinations required some legitimate medical decision-making, and in order to create a false justification for the other Fraudulent Services that the Preziosi Chiropractic Defendants purported to provide to the insureds.

128.    In the claims for initial examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely and falsely represented that the putative initial examinations involved legitimate low complexity medical decision-making, in

order to create a false basis to bill for the initial examinations under CPT code 99203. This is because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations that do not require any complex medical decision-making at all.

129.   In this context, Preziosi, who – at all relevant times – purported to own Preziosi Chiropractic, did not legitimately supervise the business activities of Preziosi Chiropractic.

130.   Had Preziosi legitimately supervised the business activities of Preziosi Chiropractic, he would have addressed the fact that – among other things – Preziosi Chiropractic's billings routinely and falsely represented the nature, extent, and results of the purported initial examinations at Preziosi Chiropractic.

131.   Because Preziosi Chiropractic did not qualify for the "wholly owned" exemption of the Clinic Act's licensing and operating requirements – and, in the alternative, did not maintain a clinic license and employ a licensed physician as medical director – Preziosi Chiropractic operated unlawfully under Florida law, and was not entitled to collect PIP Benefits.

132.   In the claims for initial examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely and fraudulently misrepresented that the initial examinations were lawfully provided and eligible for PIP reimbursement, when, in fact, the initial examinations were neither lawfully provided nor reimbursable, because:

(i)      the putative initial examinations were illusory, with outcomes that were

pre-determined to result in substantially identical, false "diagnoses" and treatment recommendations, regardless of the insureds' true individual circumstances and presentation;

(ii)    the charges for the putative initial examinations misrepresented the nature, extent, and results of the examinations; and

(iii)   Preziosi Chiropractic was never eligible to collect PIP Benefits in connection with the putative initial examinations in the first instance, inasmuch as Preziosi Chiropractic operated in pervasive violation of Florida law.

## C.    The Preziosi Chiropractic Defendants' Fraudulent and Unlawful Claims for Follow-Up Examinations

133.    In addition to their fraudulent initial examinations, the Preziosi Chiropractic Defendants also purported to subject many of the insureds in the claims identified in Exhibit "1" to one or more fraudulent follow-up examinations during the course of their fraudulent treatment protocol.

134.    As set forth in Exhibit "1", the Preziosi Chiropractic Defendants billed the follow-up examinations to GEICO under CPT code 99213, typically resulting in a charge of $150.00 or $200.00 for each follow-up examination they purported to provide.

135.    In the claims for follow-up examinations identified in Exhibit "1", the charges for follow-up examinations were fraudulent in that they misrepresented the Preziosi Chiropractic Defendants' eligibility to collect PIP Benefits in the first instance.

136.    In fact, and as set forth herein, the Preziosi Chiropractic Defendants were never eligible to collect PIP Benefits, inasmuch as Preziosi Chiropractic operated in pervasive violation of Florida law.

137.    As set forth below, the charges for the follow-up examinations identified in Exhibit "1" were also fraudulent in that they misrepresented the nature, extent, and results of the follow-up examinations.

1.    **Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

138.    Pursuant to the CPT Assistant, the use of CPT code 99213 to bill for a follow-up patient examination typically represents that the insured presented with problems of low to moderate severity.

139.    The CPT Assistant provides various clinical examples of low to moderate severity presenting problems that would support the use of CPT code 99213 to bill for a follow-up patient examination:

(i)    Follow-up visit with a 55-year-old male for management of hypertension, mild fatigue, on beta blocker/thiazide regimen. (Family Medicine/Internal Medicine)

(ii)    Follow-up office visit for an established patient with stable cirrhosis of the liver. (Gastroenterology)

(iii)    Outpatient visit with 37-year-old male, established patient, who is 3 years post total colectomy for chronic ulcerative colitis, presents for increased irritation at his stoma. (General Surgery)

(iv)    Routine, follow-up office evaluation at three-month interval for a 77-year-old female with nodular small cleaved-cell lymphoma. (Hematology/Oncology)

(v)    Follow-up visit for a 70-year-old diabetic hypertensive patient with recent change in insulin requirement. (Internal Medicine/Nephrology)

(vi)    Quarterly follow-up visit for a 45-year-old male, with stable chronic asthma, on steroid and bronchodilator therapy. (Pulmonary Medicine)

(vii)    Office visit with 80-year-old female established patient, for follow-up

osteoporosis, status-post compression fractures. (Rheumatology)

140.    Accordingly, pursuant to the CPT Assistant, the low to moderate severity presenting problems that could support the use of CPT code 99213 to bill for a follow-up patient examination typically are problems that pose some ongoing, real threat to the patient's health.

141.    By contrast, and as set forth herein, to the extent that the insureds in the claims identified in Exhibit "1" suffered any injuries at all as the result of their minor accidents, the injuries were minor soft tissue injuries – such as sprains and strains – which were not severe at all.

142.    Ordinary soft tissue injuries such as sprains and strains virtually always resolve after a short course of conservative treatment such as rest, ice, compression, and/or elevation – or no treatment at all.

143.    By the time the insureds in the claims identified in Exhibit "1" presented at Preziosi Chiropractic for the putative follow-up examinations, the insureds either did not have any genuine presenting problems at all as the result of their typically minor automobile accidents, or their presenting problems were minimal.

144.    Even so, in the claims for follow-up examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely billed GEICO for their putative follow-up examinations under CPT code 99213, and thereby falsely represented that the insureds continued to suffer from presenting problems of low to moderate severity at the time of the purported follow-up examinations.

145.    For example:

(i)     On June 14, 2021, an insured named DS was involved in an automobile accident. The contemporaneous police report indicated that DS's vehicle was drivable following the accident. The police report further indicated that DS was not injured and that DS did not complain of any pain at the scene. In keeping with the fact that DS was not seriously injured, DS did not visit any hospital emergency room following the accident. To the extent that DS experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following a purported follow-up examination of DS at Preziosi Chiropractic on September 1, 2021, the Preziosi Chiropractic Defendants billed GEICO for the follow-up examination under CPT code 99213, and thereby falsely represented that DS presented with problems of low to moderate severity.

(ii)    On June 14, 2021, an insured named RV was involved in an automobile accident. The contemporaneous police report indicated that RV's vehicle was drivable following the accident. The police report further indicated that RV was not injured and that RV did not complain of any pain at the scene. In keeping with the fact that RV was not seriously injured, RV did not visit any hospital emergency room following the accident. To the extent that RV experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following a purported follow-up examination of RV at Preziosi Chiropractic on September 1, 2021, the Preziosi Chiropractic Defendants billed GEICO for the follow-up examination under CPT code 99213, and thereby falsely represented that RV presented with problems of low to moderate severity.

(iii)   On February 10, 2022, an insured named JM was involved in an automobile accident. The contemporaneous police report indicated that JM was not injured and that JM did not complain of any pain at the scene. In keeping with the fact that JM was not seriously injured, JM did not visit any hospital emergency room following the accident. To the extent that JM experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following a purported follow-up examination of JM at Preziosi Chiropractic on May 26, 2022, the Preziosi Chiropractic Defendants billed GEICO for the follow-up examination under CPT code 99213, and thereby falsely represented that JM presented with problems of low to moderate severity.

(iv)    On November 16, 2022, an insured named WL was involved in an automobile accident. The contemporaneous police report indicated that WL was not injured and that WL did not complain of any pain at the scene. In keeping with the fact that WL was not seriously injured, WL did not visit any hospital emergency room following the accident. To the extent that WL experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following a purported follow-up examination of WL at Preziosi Chiropractic on February 9, 2023, the Preziosi Chiropractic Defendants billed GEICO for the follow-up examination under CPT code 99213, and thereby falsely represented that WL presented with problems of low to moderate severity.

(v)     On May 25, 2024, an insured named SP was involved in an automobile accident. The contemporaneous police report indicated that SP's vehicle was drivable following the accident. The police report further indicated that SP was not injured and that SP did not complain of any pain at the scene. In keeping with the fact that SP was not seriously injured, SP did not visit any hospital emergency room following the accident. To the extent that SP experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following a purported follow-up examination of SP at Preziosi Chiropractic on August 23, 2024, the Preziosi Chiropractic Defendants billed GEICO for the follow-up examination under CPT code 99213, and thereby falsely represented that SP presented with problems of low to moderate severity.

146.    These are only representative examples. In the claims for follow-up examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely and falsely represented that the insureds presented with problems of low to moderate severity, when, in fact, the insureds either did not have any genuine presenting problems at all as the result of their typically minor automobile accidents at the time of the follow-up examinations, or else their presenting problems were minimal.

147.    In the claims for follow-up examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants virtually always falsely represented that the insureds

presented with problems of low to moderate severity in order to: (i) create a false basis for their charges for the examinations billed under CPT code 99213, because examinations billed under CPT code 99213 are reimbursable at higher rates than examinations involving presenting problems of minimal or no severity; and (ii) create a false basis for the other Fraudulent Services that the Defendants purported to provide to the insureds.

### 2. Misrepresentations Regarding the Nature, Extent, and Results of the Follow-Up Examinations

148. What is more, in the claims for follow-up examinations identified in Exhibit "1", neither Preziosi nor any other health care practitioner associated with Preziosi Chiropractic ever took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

149. Rather, following the purported follow-up examinations at Preziosi Chiropractic, the examining practitioners – at the direction of the Preziosi Chiropractic Defendants – simply: (i) reiterated the false, boilerplate "diagnoses" from the insureds' initial examinations; and (ii) either: (a) referred the insureds for even more medically unnecessary Fraudulent Services, despite the fact that the insureds purportedly had already received extensive physical therapy and other Fraudulent Services that supposedly had not been successful in resolving their purported pain symptoms; or (b) discharged the insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

150.    The putative "follow-up examinations" that the Preziosi Chiropractic Defendants purported to provide the insureds in the claims identified in Exhibit "1" were, therefore, medically useless, and played no legitimate role in the treatment or care of the insureds. This is because the putative "results" of the examinations were prearranged to comport with the medically unnecessary treatment plans that were pre-determined for each insured from the moment they presented at the Preziosi Chiropractic offices.

151.    In the claims for follow-up examinations identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely and falsely misrepresented that the follow-up examinations were lawfully provided and eligible for PIP reimbursement, when, in fact, the follow-up examinations were neither lawfully provided nor reimbursable, because:

(i)     the putative follow-up examinations were illusory, with outcomes that were pre-determined to result in substantially identical, false "diagnoses" and treatment recommendations, regardless of the insureds' true individual circumstances and presentation;

(ii)    the charges for the putative follow-up examinations misrepresented the nature, extent, and results of the examinations; and

(iii)   Preziosi Chiropractic was never eligible to collect PIP Benefits in connection with the putative follow-up examinations in the first instance, inasmuch as Preziosi Chiropractic operated in pervasive violation of Florida law.

## D.    The Unlawful Operation of the Clinic Defendants in Violation of the Patient Brokering Act and the Anti-Kickback Statute

152.    As set forth above, the Patient Brokering Act and Anti-Kickback Statute broadly prohibit any person from offering, paying, soliciting, or receiving any

commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

153.    Moreover, and as also set forth above, PIP reimbursement for health care services is limited to $2,500.00 per insured, unless a physician, physician assistant, or advanced practice registered nurse determines that the insured suffered from an "emergency medical condition". If a physician, physician assistant, or advanced practice registered nurse determines that the insured suffered from an "emergency medical condition", then health care providers can receive up to $10,000.00 in PIP reimbursement for treatment provided to the insured.

154.    The Preziosi Chiropractic Defendants did not have a physician, physician assistant, or advanced practice registered nurse on staff to render "emergency medical condition" diagnoses and, therefore, needed to find a physician, physician assistant, or advanced practice registered nurse willing to render these diagnoses, which would enable them to submit the maximum amount of fraudulent and unlawful PIP billing, per insured, to GEICO and other insurers.

155.    However, no legitimate health care provider would purport to diagnose the insureds in Exhibits "1" - "2" with any "emergency medical conditions" because – to the extent that the insureds in the claims identified in Exhibits "1" - "2" had any presenting problems at all as the result of their typically minor automobile accidents – the problems virtually always were minimal severity soft tissue injuries such as sprains or strains, which did not rise to the level of "emergency medical conditions".

156.    Accordingly, the Preziosi Chiropractic Defendants needed to find a pliable physician, physician assistant, or advanced practice registered nurse who would be willing to falsely diagnose their patients with "emergency medical conditions", so as to allow them to bill up to an additional $7,500.00 per patient.

157.    At the same time, the Integrity Medical Defendants wanted to submit as much PIP billing as possible for their own medically unnecessary and illusory Fraudulent Services, without regard for the fact that the insureds had not suffered any injuries that would warrant these services.

158.    However, in order to bill GEICO and other insurers for their own medically unnecessary and illusory Fraudulent Services, the Integrity Medical Defendants needed to obtain patient referrals from other health care providers, such as the Preziosi Chiropractic Defendants.

159.    Accordingly, the Preziosi Chiropractic Defendants and the Integrity Medical Defendants entered into a secret and unlawful patient brokering agreement, whereby, in exchange for patient referrals from the Preziosi Chiropractic Defendants for expensive and medically unnecessary Fraudulent Services, the Integrity Medical Defendants agreed to falsely diagnose the insureds with phony "emergency medical conditions" – which allowed the Preziosi Chiropractic Defendants to bill GEICO and other insurers up to an additional $7,500.00 per insured in PIP Benefits – and then to refer each insured back to the Preziosi Chiropractic Defendants for the continued provision of additional medically unnecessary Fraudulent Services.

160.    In reality, these were "pay-to-play" arrangements that caused the

Preziosi Chiropractic Defendants and the Integrity Medical Defendants to provide medically unnecessary patient referrals in violation of the Patient Brokering Act and the Anti-Kickback Statute.

161.    For example:

(i)     On December 10, 2019, an insured named SS was involved in an automobile accident. On December 18, 2019, SS visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused SS to be referred to Integrity Medical for a medically unnecessary examination, which occurred on September 28, 2020, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed SS with an "emergency medical condition" and then referred SS back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to SS. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(ii)    On January 30, 2020, an insured named PR was involved in an automobile accident. On February 3, 2020, PR visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused PR to be referred to Integrity Medical for a medically unnecessary examination, which occurred on July 8, 2020, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed PR with an "emergency medical condition" and then referred PR back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to PR. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(iii)   On December 27, 2020, an insured named BB was involved in an automobile accident. On December 30, 2020, BB visited Preziosi Chiropractic for an initial examination, which was billed through

Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused BB to be referred to Integrity Medical for a medically unnecessary examination, which occurred on March 12, 2021, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed BB with an "emergency medical condition" and then referred BB back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to BB. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(iv)    On February 5, 2021, an insured named CV was involved in an automobile accident. On February 8, 2021, CV visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused CV to be referred to Integrity Medical for a medically unnecessary examination, which occurred on March 4, 2021, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed CV with an "emergency medical condition" and then referred CV back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to CV. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(v)    On August 17, 2021, an insured named SY was involved in an automobile accident. On August 18, 2021, SY visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused SY to be referred to Integrity Medical for a medically unnecessary examination, which occurred on September 27, 2021, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed SY with an "emergency medical condition" and then referred SY back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to SY. These referrals violated

the Patient Brokering Act and Anti-Kickback Statute.

(vi)   On January 11, 2022, an insured named MF was involved in an automobile accident. On January 19, 2022, MF visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused MF to be referred to Integrity Medical for a medically unnecessary examination, which occurred on April 2, 2022, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed MF with an "emergency medical condition" and then referred MF back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to MF. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(vii)  On March 15, 2022, an insured named AB was involved in an automobile accident. On March 22, 2022, AB visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused AB to be referred to Integrity Medical for a medically unnecessary examination, which occurred on April 16, 2022, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed AB with an "emergency medical condition" and then referred AB back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to AB. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(viii) On December 23, 2022, an insured named MG was involved in an automobile accident. On December 23, 2022, MG visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused MG to be referred to Integrity Medical for a medically unnecessary examination, which occurred on February 7, 2023, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed MG with an "emergency medical

condition" and then referred MG back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to MG. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(ix)    On February 11, 2023, an insured named DJ was involved in an automobile accident. On February 28, 2023, DJ visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused DJ to be referred to Integrity Medical for a medically unnecessary examination, which occurred on March 22, 2023, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed DJ with an "emergency medical condition" and then referred DJ back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to DJ. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(x)     On July 31, 2023, an insured named HB was involved in an automobile accident. On August 1, 2023, HB visited Preziosi Chiropractic for an initial examination, which was billed through Preziosi Chiropractic to GEICO. Following the examination, the Preziosi Chiropractic Defendants caused HB to be referred to Integrity Medical for a medically unnecessary examination, which occurred on September 12, 2023, and which was billed through Integrity Medical to GEICO. As unlawful compensation for the referral, the Integrity Medical Defendants falsely diagnosed HB with an "emergency medical condition" and then referred HB back to Preziosi Chiropractic, which enabled the Preziosi Chiropractic Defendants to submit additional PIP billing through Preziosi Chiropractic to GEICO in connection with the medically unnecessary chiropractic/physical therapy treatment that Preziosi Chiropractic purported to provide to HB. These referrals violated the Patient Brokering Act and Anti-Kickback Statute.

162.    These are only representative examples. In the claims identified in Exhibits "1" - "2", the Preziosi Chiropractic Defendants and the Integrity Medical

Defendants routinely and unlawfully made and received patient referrals in exchange for compensation, in violation of the Patient Brokering Act and the Anti-Kickback Statute.

163.    In order to obtain pre-determined – and false – "emergency medical condition" diagnoses pursuant to the Preziosi Chiropractic Defendants' and the Integrity Medical Defendants' unlawful patient brokering scheme, both the Preziosi Chiropractic Defendants and the Integrity Medical Defendants routinely referred multiple insureds who had been involved in relatively minor car accidents for medically unnecessary Fraudulent Services, despite the fact that the insureds were differently situated and, in any case, did not require the Fraudulent Services.

164.    In the claims identified in Exhibits "1" - "2", the Preziosi Chiropractic Defendants and the Integrity Medical Defendants routinely and falsely represented that the underlying health care services were lawfully provided and reimbursable, when, in fact, they were neither lawfully provided nor reimbursable, because they were provided – to the extent that they were provided at all – pursuant to an illegal patient brokering and kickback scheme.

165.    In this context, Preziosi, who – at all relevant times – purported to own Preziosi Chiropractic, did not legitimately supervise the business activities of Preziosi Chiropractic.

166.    Had Preziosi legitimately supervised the business activities of Preziosi Chiropractic, he would not have permitted Preziosi Chiropractic to operate pursuant to the illegal patient brokering and kickback scheme between Preziosi Chiropractic

and Integrity Medical.

167.    Because Preziosi Chiropractic did not qualify for the "wholly owned" exemption from the Clinic Act's licensing and operating requirements – and, in the alternative, did not maintain a clinic license and employ a licensed physician as medical director – Preziosi Chiropractic operated unlawfully under Florida law, and was not entitled to collect PIP Benefits.

168.    Similarly, Behrmann, who – at all relevant times – purported to own Integrity Medical, did not legitimately supervise the business activities of Integrity Medical.

169.    Had Behrmann legitimately supervised the business activities of Integrity Medical, he would not have permitted Integrity Medical to operate pursuant to the illegal patient brokering and kickback scheme between Integrity Medical and Preziosi Chiropractic.

170.    Because Integrity Medical did not qualify for the "wholly owned" exemption of the Clinic Act's licensing and operating requirements – and, in the alternative, did not maintain a clinic license and employ a licensed physician as medical director – Integrity Medical operated unlawfully under Florida law, and was not entitled to collect PIP Benefits.

## E.    The Preziosi Chiropractic Defendants' Fraudulent and Unlawful Claims for "Physical Therapy" Services

171.    In addition to the fraudulent initial examinations and follow-up examinations, the Preziosi Chiropractic Defendants virtually always purported to

subject the insureds in the claims identified in Exhibit "1" to months of medically unnecessary "physical therapy" treatments, which the Preziosi Chiropractic Defendants then fraudulently and unlawfully billed to GEICO.

172.    As set forth in Exhibit "1", the Preziosi Chiropractic Defendants billed the "physical therapy" services to GEICO under:

(i)     CPT code 97010, for purported hot/cold pack treatment, typically resulting in a charge of $40.00 for each modality they purported to provide.

(ii)    CPT code 97012, for purported mechanical traction, typically resulting in a charge of $40.00 or $50.00 for each modality they purported to provide.

(iii)   CPT code 97014, for purported electrical stimulation, typically resulting in a charge of $40.00 for each modality they purported to provide.

(iv)    CPT code 97035, for purported ultrasound treatment, typically resulting in a charge of $40.00 for each modality they purported to provide.

(v)     CPT code 97036, for purported hydrotherapy, typically resulting in a charge of $40.00 for each modality they purported to provide.

(vi)    CPT code 97039, for purported unlisted physical therapy procedures, typically resulting in a charge of $40.00, $50.00, or $70.00 for each modality they purported to provide.

(vii)   CPT code 97110, for purported therapeutic exercises, typically resulting in a charge of $70.00 or $80.00 for each modality they purported to provide.

(viii)  CPT code 97130, for purported cognitive therapeutic interventions, typically resulting in a charge of $40.00 for each modality they purported to provide.

(ix)    CPT code 97139, for purported unlisted therapeutic procedures, typically resulting in a charge of $40.00 or $50.00 for each modality they purported to provide.

(x) CPT code 97140, for purported manual therapy, typically resulting in a charge of $40.00 or $50.00 for each modality they purported to provide.

(xi) CPT code 97169, for purported athletic training evaluations, typically resulting in a charge of $40.00 for each modality they purported to provide.

(xii) CPT code 97520, for purported prosthetic training services, typically resulting in a charge of $80.00 for each modality they purported to provide.

(xiii) CPT code 97530, for purported therapeutic activities, typically resulting in a charge of $70.00 or $80.00 for each modality they purported to provide.

(xiv) CPT code 97814, for purported acupuncture services, typically resulting in a charge of $110.00 for each modality they purported to provide.

(xv) HCPCS code G0237, for purported therapeutic procedures to increase strength or endurance of respiratory muscles, typically resulting in a charge of $40.00 for each modality they purported to provide.

(xvi) HCPCS code G0238, for purported therapeutic procedures to improve respiratory function, typically resulting in a charge of $40.00, $50.00, or $60.00 for each modality they purported to provide.

(xvii) HCPCS code G0283, for purported electrical stimulation, typically resulting in a charge of $40.00 or $50.00 for each modality they purported to provide.

(xviii) HCPCS code S9090, for purported vertebral axial decompression, typically resulting in a charge of $40.00 for each modality they purported to provide.

173. In the claims identified in Exhibit "1", the charges for the purported "physical therapy" services were fraudulent and unlawful in that they misrepresented Preziosi Chiropractic's eligibility to collect PIP Benefits in the first instance.

174. In fact, and as set forth herein, Preziosi Chiropractic was never eligible to collect PIP Benefits, inasmuch as Preziosi Chiropractic operated in pervasive

violation of Florida law.

175. In the claims identified in Exhibit "1", the charges for the purported "physical therapy" services also were fraudulent, unlawful, and ineligible for PIP reimbursement because the services were performed – to the extent that they were performed at all – by unlicensed/unsupervised individuals, and by massage therapists, including – among others – Rose Clark, L.M.T. ("Clark"); Nina Creed, L.M.T. ("Creed"); Sweeta (Rita) Firoz, L.M.T. ("Firoz"); Janet M. Gillooly, L.M.T. ("Gillooly"); Rhonda Marcia Goodall, L.M.T. ("Goodall"); Jessica Gumm, L.M.T. ("Gumm"); and Christine Pieri, L.M.T. ("Pieri"), none of whom was licensed to practice physical therapy.

176. The Preziosi Chiropractic Defendants were aware of the fact that they could not legally recover PIP Benefits for services performed by massage therapists and unlicensed/unsupervised individuals.

177. As a result, and in order to conceal the fact that Clark, Creed, Firoz, Gillooly, Goodall, Gumm, Pieri, and other massage therapists and unlicensed/unsupervised individuals performed the purported "physical therapy" services that were unlawfully billed through Preziosi Chiropractic, the Preziosi Chiropractic Defendants omitted any reference to Clark, Creed, Firoz, Gillooly, Goodall, Gumm, Pieri, and other massage therapists and unlicensed/unsupervised individuals associated with Preziosi Chiropractic on the HCFA-1500 forms that they used to bill for the putative "physical therapy" services.

178. Instead, in the claims for "physical therapy" services identified in Exhibit

"1", the Preziosi Chiropractic Defendants routinely and falsely listed Preziosi in Box 31 of the HCFA-1500 forms as the supposed provider or direct supervisor of the purported "physical therapy" services.

179.    In fact, Preziosi – who was simultaneously purporting to perform or directly supervise an impossible number of physical therapy and other services on individual dates – did not legitimately perform or directly supervise the "physical therapy" services in the claims identified in Exhibit "1", and could not have legitimately performed or directly supervised the "physical therapy" services.

180.    For example:

(i)    On March 19, 2019, Preziosi purported to personally perform – or at least directly supervise – 25.75 hours of physical therapy and related services that were provided to thirteen different GEICO insureds at Preziosi Chiropractic.

(ii)   On September 21, 2020, Preziosi purported to personally perform – or at least directly supervise – 23.25 hours of physical therapy and related services that were provided to eleven different GEICO insureds at Preziosi Chiropractic.

(iii)  On March 15, 2021, Preziosi purported to personally perform – or at least directly supervise – 22.75 hours of physical therapy and related services that were provided to eight different GEICO insureds at Preziosi Chiropractic.

(iv)   On April 5, 2021, Preziosi purported to personally perform – or at least directly supervise – 22 hours of physical therapy and related services that were provided to eight different GEICO insureds at Preziosi Chiropractic.

(v)    On July 12, 2022, Preziosi purported to personally perform – or at least directly supervise – 21.75 hours of physical therapy and related services that were provided to eight different GEICO insureds at Preziosi Chiropractic.

181.   These are only representative examples. In the claims identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely and falsely represented that Preziosi had performed – or at least directly supervised – an impossible amount of services on individual dates.

182.   Furthermore, upon information and belief, the fraudulent and unlawful billing that the Preziosi Chiropractic Defendants submitted to GEICO on individual dates constituted only a fraction of the total fraudulent and unlawful billing for Fraudulent Services that they submitted – or caused to be submitted – to all of the automobile insurers in the Florida automobile insurance market.

183.   GEICO is only one of the automobile insurance companies doing business in the Florida automobile insurance market.

184.   It is extremely improbable – to the point of impossibility – that the Preziosi Chiropractic Defendants only submitted fraudulent billing to GEICO alone, and that the Preziosi Chiropractic Defendants did not simultaneously bill other automobile insurers.

185.   Thus, upon information and belief, the impossible amount of Fraudulent Services that Preziosi purported to perform or directly supervise for GEICO insureds, on individual dates of service – including but not limited to the dates of service identified above – constituted only a fraction of the total amount of Fraudulent Services that Preziosi purported to perform or directly supervise on those same dates of service.

186.   Even so, the Preziosi Chiropractic Defendants billed GEICO for tens of

thousands of purported health care services, and falsely represented in the billing that Preziosi had personally performed or directly supervised almost all of them.

187.    In the claims for "physical therapy" services identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely and falsely misrepresented that the "physical therapy" services were lawfully provided and reimbursable, when, in fact, they were neither lawfully provided nor reimbursable, because:

(i)     the purported "physical therapy" services were performed – to the extent that they were performed at all – by massage therapists and unlicensed/unsupervised individuals, in contravention of Florida law;

(ii)    the Preziosi Chiropractic Defendants could not lawfully recover PIP Benefits for the purported "physical therapy" services, because they were performed by massage therapists and unlicensed/unsupervised individuals; and

(iii)   the Preziosi Chiropractic Defendants systematically and fraudulently misrepresented and concealed the identities of the individuals who personally performed or directly supervised the putative "physical therapy" services.

188.    Moreover, and in keeping with the fact that the "physical therapy" services in the claims identified in Exhibit "1" were unlawfully performed by massage therapists and unlicensed/unsupervised individuals – without any legitimate supervision by Preziosi or any other physicians, chiropractors, or physical therapists – the services were medically unnecessary and were provided, to the extent that they were provided at all, in a manner that did not comply with legitimate standards of care.

189.    In a legitimate clinical setting, each individual patient's physical therapy treatment schedule, and the specific treatment modalities that will be used as a part of

that treatment, must be tailored to the specific patient's circumstances, symptomatology, and presentation.

190.   In a legitimate clinical setting, the nature of, extent of, and schedule for physical therapy is constantly adjusted for each individual patient based on each patient's treatment progress, as assessed during each patient's follow-up examinations and on an ongoing basis as they receive the physical therapy.

191.   In keeping with the fact that the purported "physical therapy" services that were billed to GEICO through Preziosi Chiropractic were not medically necessary, the Preziosi Chiropractic Defendants did not tailor the "physical therapy" services that they purported to provide to each insured's individual circumstances and presentation.

192.   There are many individual types of physical therapy services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

193.   However, the Preziosi Chiropractic Defendants purported to provide substantially similar physical therapy "treatments" to the insureds in the claims identified in Exhibit "1" – on substantially the same schedule – without regard for the insureds' individual circumstances.

194.   In this context, Preziosi, who – at all relevant times – purported to own Preziosi Chiropractic, did not legitimately supervise the business activities of Preziosi Chiropractic.

195.   Had Preziosi legitimately supervised the business activities of Preziosi

Chiropractic, he would have not have permitted Preziosi Chiropractic to bill for medically unnecessary "physical therapy" services that were unlawfully performed by massage therapists and unlicensed/unsupervised individuals, and unlawfully billed to GEICO.

196.    Because Preziosi Chiropractic did not qualify for the "wholly owned" exemption of the Clinic Act's licensing and operating requirements – and, in the alternative, did not maintain a clinic license and employ a licensed physician as medical director – Preziosi Chiropractic operated unlawfully under Florida law, and was not entitled to collect PIP Benefits.

**F.    The Fraudulent and Unlawful Charges for Extracorporeal Shockwave Therapy at Preziosi Chiropractic**

197.    Based upon the false, boilerplate "diagnoses" that the Preziosi Chiropractic Defendants provided during the initial and follow-up examinations, the Preziosi Chiropractic Defendants also purported to subject many of the insureds in the claims identified in Exhibit "1" to one or more sessions of extracorporeal shockwave therapy ("ESWT") during the course of their fraudulent treatment protocols.

198.    Typically, Preziosi purported to perform the ESWT at Preziosi Chiropractic, which was then billed to GEICO through Preziosi Chiropractic under CPT code 0101T, virtually always resulting in a charge of $500.00 for each ESWT treatment that the Preziosi Chiropractic Defendants purported to provide.

199.    Like the charges for the other Fraudulent Services, the charges for ESWT were fraudulent in that the ESWT was medically unnecessary and was provided – to

the extent that it was provided at all – pursuant to false, boilerplate "diagnoses" that the Preziosi Chiropractic Defendants provided during their fraudulent examinations.

200. In keeping with the fact that the Preziosi Chiropractic Defendants' "treatments" were medically unnecessary: (i) ESWT has not been approved by the U.S. Food and Drug Administration ("FDA") for the treatment of back, neck, or shoulder pain; (ii) Palmetto, a contractor for the Centers for Medicare and Medicaid Services ("CMS"), has published coverage guidance stating that ESWT is neither reasonable nor necessary for the treatment of musculoskeletal conditions; and (iii) there are no legitimate peer-reviewed data that establish the effectiveness of ESWT for the treatment of back, neck, or shoulder pain.

201. Even so, the Preziosi Chiropractic Defendants purported to provide medically unnecessary ESWT to many insureds pursuant to their pre-determined fraudulent treatment protocols, without regard for each insured's individual complaints, symptoms, or presentation.

202. For example:

(i)     On or about April 3, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named AA.

(ii)    On or about April 10, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named DS.

(iii)   On or about May 15, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named MM.

(iv)    On or about May 29, 2024, the Preziosi Chiropractic Defendants billed

GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named MS.

(v) On or about June 3, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named AR.

(vi) On or about June 12, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named ES.

(vii) On or about June 20, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named VD.

(viii) On or about June 28, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named OG.

(ix) On or about July 29, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named OE.

(x) On or about August 8, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named JH.

(xi) On or about August 16, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named JK.

(xii) On or about September 4, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named MD.

(xiii) On or about September 12, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named JH.

(xiv) On or about September 30, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named YR.

(xv)   On or about October 2, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named AG.

(xvi)   On or about October 3, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named YQ.

(xvii)   On or about October 14, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named JM.

(xviii) On or about October 18, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named AA.

(xix)   On or about October 28, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named JM.

(xx)   On or about November 15, 2024, the Preziosi Chiropractic Defendants billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to an insured named NR.

203.   These are only representative examples. In the claims for ESWT identified in Exhibit "1", the Preziosi Chiropractic Defendants routinely billed GEICO for medically unnecessary ESWT that purportedly was provided through Preziosi Chiropractic to insureds.

## G.   The Defendants' Violation of the False and Fraudulent Insurance Claims Statute

204.   The Defendants knew that, if they made a legitimate, good-faith effort to collect deductibles from their patients, it would impede their ability to carry out the fraudulent and unlawful schemes described herein. For instance, if the Defendants made legitimate efforts to collect deductibles, insureds would be less likely to continue

presenting to the Clinic Defendants for medically unnecessary treatments.

205.    Accordingly, as part and parcel of their fraudulent and unlawful schemes, the Defendants unlawfully engaged in the general business practice of waiving – or failing to make a good-faith effort to collect – PIP deductibles from their patients, in violation of the False and Fraudulent Insurance Claims Statute.

206.    In keeping with this fact, in virtually all of the thousands of bills (i.e., HCFA-1500 forms) submitted to GEICO through the Clinic Defendants' Fraudulent Services, the Defendants represented that they did not collect any money, whether it be a co-payment or a deductible, from the insureds.

207.    In the claims identified in Exhibits "1" - "2", the Defendants routinely and falsely represented that the underlying health care services were lawfully provided and reimbursable, when, in fact, they were neither lawfully provided nor reimbursable, because the Defendants operated in violation of the False and Fraudulent Insurance Claims Statute.

### III.    The Fraudulent Claims the Defendants Submitted to GEICO

208.    To support their fraudulent charges, the Defendants systematically submitted thousands of bills and treatment reports – containing thousands of individual charges – to GEICO through the respective Clinic Defendants, seeking payment for Fraudulent Services that the Defendants were not entitled to receive.

209.    The claims that the Defendants submitted – or caused to be submitted – to GEICO were false and misleading in the following material respects:

(i)    The bills and treatment reports submitted by the Defendants uniformly

misrepresented to GEICO that the Defendants were in compliance with Florida law and were, therefore, eligible to collect PIP Benefits in the first instance, when, in fact, they were not.

(ii)    The bills and treatment reports submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided, lawfully billed to GEICO, and eligible for PIP reimbursement, when, in fact, they were not.

(iii)    The bills and treatment reports submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services were actually performed. In fact, the Fraudulent Services frequently were not performed at all, and – to the extent that they were performed – they were not medically necessary and were performed as part of pre-determined fraudulent treatment and billing protocols designed solely to financially enrich the Defendants, and not to benefit the insureds who supposedly were subjected to the Fraudulent Services.

(iv)    The bills and treatment reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level and nature of the Fraudulent Services that purportedly were provided.

## IV.    The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

210.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO.

211.    To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, the Defendants systematically concealed their fraud and have gone to great lengths to accomplish this concealment.

212.    For instance, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Defendants operated in violation of Florida law and were, therefore, ineligible to collect PIP Benefits in the

first instance.

213.    The Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary, and frequently, never even performed in the first instance.

214.    The Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were oftentimes unlawfully performed by massage therapists and unlicensed/unsupervised individuals, and unlawfully billed to GEICO.

215.    GEICO is under statutory and contractual duty to promptly and fairly process claims within thirty (30) days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to cause – and did cause – GEICO to rely on them. As a result, GEICO has incurred damages of more than $3,540,000.00.

216.    GEICO did not discover – and could not reasonably have discovered – that its damages were attributable to fraud until shortly before it commenced this action.

### FIRST CAUSE OF ACTION
**Against Preziosi Chiropractic**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

217.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

218.    There is an actual case in controversy between GEICO and Preziosi

67

Chiropractic regarding more than $75,000.00 in fraudulent and unlawful pending billing that has been submitted to GEICO in the name of Preziosi Chiropractic.

219.    Preziosi Chiropractic has no right to receive payment for any pending bills submitted to GEICO because Preziosi Chiropractic unlawfully operated in violation of Florida law.

220.    Preziosi Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were neither lawfully provided nor lawfully billed to GEICO.

221.    Preziosi Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the insureds who purportedly received and were subjected to the Fraudulent Services.

222.    Preziosi Chiropractic has no right to receive payment for any pending bills submitted to GEICO because – in many cases – the Fraudulent Services were never provided in the first instance.

223.    Preziosi Chiropractic has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided, in order to inflate the charges submitted to GEICO.

224.    Accordingly, GEICO requests that this Court enter a judgment pursuant

to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Preziosi Chiropractic has no right to receive payment for any of the pending bills submitted to GEICO.

<h3 style="text-align:center"><u>SECOND CAUSE OF ACTION</u><br>Against Preziosi<br>(Violation of RICO – 18 U.S.C. § 1962(c))</h3>

225.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

226.    Preziosi Chiropractic is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

227.    Preziosi has knowingly conducted and/or participated in, directly or indirectly, the conduct of Preziosi Chiropractic's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over five years, seeking payments that Preziosi Chiropractic was not eligible to receive, because: (i) Preziosi Chiropractic unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the insureds who purportedly received and were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided

in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

228.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

229.    Preziosi Chiropractic's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurance companies. The predicate acts of mail fraud are the regular way in which Preziosi operated Preziosi Chiropractic, inasmuch as Preziosi Chiropractic was not engaged in a legitimate health care practice, and acts of mail fraud were, therefore, essential in order for Preziosi Chiropractic to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Preziosi Chiropractic continues to attempt collection on the fraudulent billing submitted through Preziosi Chiropractic to the present day.

230.    Preziosi Chiropractic is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Preziosi Chiropractic in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

231.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,170,000.00 pursuant to the fraudulent bills submitted through Preziosi Chiropractic.

232.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

### THIRD CAUSE OF ACTION
**Against Preziosi, Behrmann, and Integrity Medical**
**(Violation of RICO – 18 U.S.C. § 1962(d))**

233.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

234.    Preziosi Chiropractic is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

235.    Preziosi, Behrmann, and Integrity Medical are employed by, or associated with, the Preziosi Chiropractic enterprise.

236.    Preziosi, Behrmann, and Integrity Medical knowingly have agreed, combined, and conspired to conduct and/or participate in, directly or indirectly, the conduct of Preziosi Chiropractic's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over five years, seeking payments that Preziosi Chiropractic was not eligible to receive under the No-Fault law, because: (i) Preziosi Chiropractic unlawfully operated in violation of Florida law; (ii) the underlying

71

Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the insureds who purportedly were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

237.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

238.    Preziosi, Behrmann, and Integrity Medical knew of, agreed to, and acted in furtherance of the common and overall objective – i.e., to defraud GEICO and other automobile insurers of money – by submitting or facilitating the submission of the fraudulent charges to GEICO.

239.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,170,000.00 pursuant to the fraudulent bills submitted through the Preziosi Chiropractic enterprise.

240.    By reason of its injury, GEICO is entitled to treble damages, costs, and

reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

## FOURTH CAUSE OF ACTION
### Against Preziosi Chiropractic and Preziosi
### (Under Fla. Stat. §§ 501.201 et seq.)

241.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

242.   Preziosi Chiropractic and Preziosi are actively engaged in trade and commerce in the State of Florida.

243.   GEICO and its insureds are "consumers" as defined by Fla. Stat. § 501.23.

244.   Preziosi Chiropractic and Preziosi engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

245.   The bills and supporting documents submitted to GEICO by Preziosi Chiropractic and Preziosi in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Preziosi Chiropractic's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services were actually performed in the first instance.

246.   Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Preziosi Chiropractic and Preziosi has been materially injurious to GEICO and its insureds.

73

247.   The conduct of Preziosi Chiropractic and Preziosi was the actual and proximate cause of the damages sustained by GEICO.

248.   Preziosi Chiropractic and Preziosi's unfair and deceptive acts have caused GEICO to sustain damages of at least $1,170,000.00.

249.   By reason of Preziosi Chiropractic and Preziosi's conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

### FIFTH CAUSE OF ACTION
**Against Preziosi Chiropractic and Preziosi**
**(Common Law Fraud)**

250.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

251.   Preziosi Chiropractic and Preziosi intentionally and knowingly made false and fraudulent statements of material fact to GEICO, and concealed material facts from GEICO, in the course of their submission of thousands of fraudulent bills through Preziosi Chiropractic for the Fraudulent Services.

252.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Preziosi Chiropractic was in compliance with Florida law and was eligible to collect PIP Benefits in the first instance, when, in fact, it was not in compliance with Florida law and was not eligible to collect PIP Benefits in the first instance; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and were eligible for PIP

reimbursement, when, in fact, the Fraudulent Services were not lawfully provided and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when, in fact, the Fraudulent Services were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services were actually performed, when, in many cases, the Fraudulent Services were not actually performed.

253.    Preziosi Chiropractic and Preziosi made the above-described false and fraudulent statements, and also concealed material facts, in a calculated effort to induce GEICO to pay charges submitted through Preziosi Chiropractic that were not reimbursable.

254.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result, has been injured in its business and property by reason of the above-described conduct, in that it has paid at least $1,170,000.00 pursuant to the fraudulent bills that were submitted – or caused to be submitted – by Preziosi Chiropractic and Preziosi through Preziosi Chiropractic.

255.    Preziosi Chiropractic and Preziosi's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

256.    Accordingly, GEICO is entitled to compensatory and punitive damages, together with interest and costs, along with such other and further relief as this Court deems just, proper, and equitable.

### SIXTH CAUSE OF ACTION
### Against Preziosi Chiropractic and Preziosi
### (Unjust Enrichment)

257.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

258.   As set forth above, Preziosi Chiropractic and Preziosi have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of GEICO.

259.   When GEICO paid the bills and charges submitted – or caused to be submitted – by Preziosi Chiropractic and Preziosi, it reasonably believed that it was legally obligated to make such payments based on Preziosi Chiropractic and Preziosi's improper, unlawful, and unjust acts.

260.   Preziosi Chiropractic and Preziosi have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Preziosi Chiropractic and Preziosi voluntarily accepted, notwithstanding their improper, unlawful, and unjust billing scheme.

261.   Preziosi Chiropractic and Preziosi's retention of GEICO's payments violates fundamental principles of justice, equity, and good conscience.

262.   By reason of the above, Preziosi Chiropractic and Preziosi have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,170,000.00.

### SEVENTH CAUSE OF ACTION
### Against Integrity Medical
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

263.   GEICO incorporates, as though fully set forth herein, each and every

allegation in paragraphs 1-216, above.

264.   There is an actual case in controversy between GEICO and Integrity Medical regarding more than $75,000.00 in fraudulent and unlawful pending billing that has been submitted to GEICO in the name of Integrity Medical.

265.   Integrity Medical has no right to receive payment for any pending bills submitted to GEICO because Integrity Medical unlawfully operated in violation of Florida law.

266.   Integrity Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were neither lawfully provided nor lawfully billed to GEICO.

267.   Integrity Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the insureds who purportedly received and were subjected to the Fraudulent Services.

268.   Integrity Medical has no right to receive payment for any pending bills submitted to GEICO because – in many cases – the Fraudulent Services were never provided in the first instance.

269.   Integrity Medical has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were

provided, in order to inflate the charges submitted to GEICO.

270.    Accordingly, GEICO requests that this Court enter a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Integrity Medical has no right to receive payment for any of the pending bills submitted to GEICO.

**EIGHTH CAUSE OF ACTION**
**Against Behrmann**
**(Violation of RICO – 18 U.S.C. § 1962(c))**

271.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

272.    Integrity Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

273.    Behrmann knowingly conducted and/or participated in, directly or indirectly, the conduct of Integrity Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over five years, seeking payments that Integrity Medical was not eligible to receive, because: (i) Integrity Medical unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the insureds

who purportedly received and were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

274. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

275. Integrity Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurance companies. The predicate acts of mail fraud are the regular way in which Behrmann operated Integrity Medical, inasmuch as Integrity Medical was not engaged in a legitimate health care practice, and acts of mail fraud were, therefore, essential in order for Integrity Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Integrity Medical continues to attempt collection on the fraudulent billing submitted through Integrity Medical to the present day.

276. Integrity Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Integrity Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and

other insurers through fraudulent no-fault billing.

277.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $2,370,000.00 pursuant to the fraudulent bills submitted through Integrity Medical.

278.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

**NINTH CAUSE OF ACTION**
**Against Behrmann, Preziosi, and Preziosi Chiropractic**
**(Violation of RICO – 18 U.S.C. § 1962(d))**

279.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

280.   Integrity Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

281.   Behrmann, Preziosi, and Preziosi Chiropractic are employed by, or associated with, the Integrity Medical enterprise.

282.   Behrmann, Preziosi, and Preziosi Chiropractic have knowingly agreed, combined, and conspired to collect and/or participate in, directly or indirectly, the conduct of Integrity Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over five years, seeking payments that Integrity Medical was not eligible to receive under the No-Fault Law, because: (i) Integrity

Medical unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the insureds who purportedly were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

283.    A representative sample of the fraudulent billing and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

284.    Behrmann, Preziosi, and Preziosi Chiropractic knew of, agreed to, and acted in furtherance of the common and overall objective – i.e., to defraud GEICO and other automobile insurers of money – by submitting or facilitating the submission of the fraudulent charges to GEICO.

285.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $2,370,000.00 pursuant to the fraudulent bills submitted through the Integrity Medical enterprise.

286.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

**TENTH CAUSE OF ACTION**
**Against Integrity Medical and Behrmann**
**(Under Fla. Stat. §§ 501.201 et seq.)**

287.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

288.    Integrity Medical and Behrmann are actively engaged in trade and commerce in the State of Florida.

289.    GEICO and its insureds are "consumers" as defined by Fla. Stat. § 501.23.

290.    Integrity Medical and Behrmann engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

291.    The bills and supporting documents submitted to GEICO by Integrity Medical and Behrmann in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Integrity Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services were actually performed in the first instance.

292.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Integrity Medical and

Behrmann has been materially injurious to GEICO and its insureds.

293.    The conduct of Integrity Medical and Behrmann was the actual and proximate cause of the damages sustained by GEICO.

294.    Integrity Medical and Behrmann's unfair and deceptive acts have caused GEICO to sustain damages of at least $2,370,000.00.

295.    By reason of Integrity Medical and Behrmann's conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

## ELEVENTH CAUSE OF ACTION
### Against Integrity Medical and Behrmann
### (Common Law Fraud)

296.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

297.    Integrity Medical and Behrmann intentionally and knowingly made false and fraudulent statements of material fact to GEICO, and concealed material facts from GEICO, in the course of their submission of thousands of fraudulent bills through Integrity Medical for the Fraudulent Services.

298.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Integrity Medical was in compliance with Florida law and was eligible to collect PIP Benefits in the first instance, when, in fact, it was not in compliance with Florida law and was not eligible to collect PIP Benefits in the first instance; (ii) in every claim, the representation that

the Fraudulent Services were lawfully provided and were eligible for PIP reimbursement, when, in fact, the Fraudulent Services were not lawfully provided and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when, in fact, the Fraudulent Services were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services were actually performed, when, in many cases, the Fraudulent Services were not actually performed.

299.    Integrity Medical and Behrmann made the above-described false and fraudulent statements, and also concealed material facts, in a calculated effort to induce GEICO to pay charges submitted through Integrity Medical that were not reimbursable.

300.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result, has been injured in its business and property by reason of the above-described conduct, in that it has paid at least $2,370,000.00 pursuant to the fraudulent bills that were submitted – or caused to be submitted – by Integrity Medical and Behrmann.

301.    Integrity Medical and Behrmann's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

302.    Accordingly, GEICO is entitled to compensatory and punitive damages, together with interest and costs, along with such other and further relief as this Court deems just, proper, and equitable.

### TWELFTH CAUSE OF ACTION
### Against Integrity Medical and Behrmann
### (Unjust Enrichment)

303.  GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

304.  As set forth above, Integrity Medical and Behrmann have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of GEICO.

305.  When GEICO paid the bills and charges submitted – or caused to be submitted – by Integrity Medical and Behrmann through Integrity Medical, it reasonably believed that it was legally obligated to make such payments based on Integrity Medical and Behrmann's improper, unlawful, and unjust acts.

306.  Integrity Medical and Behrmann have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Integrity Medical and Behrmann voluntarily accepted, notwithstanding their improper, unlawful, and unjust billing scheme.

307.  Integrity Medical and Behrmann's retention of GEICO's payments violates fundamental principles of justice, equity, and good conscience.

308.  By reason of the above, Integrity Medical and Behrmann have been unjustly enriched in an amount to be determined at trial, but in no event less than $2,370,000.00.

### JURY DEMAND

309.  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co, GEICO General Insurance Company, and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.    On the First Cause of Action against Preziosi Chiropractic, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Preziosi Chiropractic has no right to receive payment for any pending bills submitted to GEICO.

B.    On the Second Cause of Action against Preziosi, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,170,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

C.    On the Third Cause of Action against Preziosi, Behrmann, and Integrity Medical, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,170,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

D.    On the Fourth Cause of Action against Preziosi Chiropractic and Preziosi, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,170,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

E.    On the Fifth Cause of Action against Preziosi Chiropractic and Preziosi,

compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,170,000.00, together with punitive damages, costs, and interest, along with such other and further relief as this Court deems just, proper, and equitable.

F.      On the Sixth Cause of Action against Preziosi Chiropractic and Preziosi, more than $1,170,000.00 in compensatory damages in favor of GEICO, plus costs and interest, along with such other and further relief as this Court deems just, proper, and equitable.

G.      On the Seventh Cause of Action against Integrity Medical, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Integrity Medical has no right to receive payment for any pending bills submitted to GEICO.

H.      On the Eighth Cause of Action against Behrmann, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $2,370,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

I.      On the Ninth Cause of Action against Behrmann, Preziosi, and Preziosi Chiropractic, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $2,370,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

J.      On the Tenth Cause of Action against Integrity Medical and Behrmann, compensatory damages in favor of GEICO in an amount to be determined at trial but

in excess of $2,370,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

      K.    On the Eleventh Cause of Action against Integrity Medical and Behrmann, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $2,370,000.00, together with punitive damages, costs, and interest, along with such other and further relief as this Court deems just, proper, and equitable.

      L.    On the Twelfth Cause of Action against Integrity Medical and Behrmann, more than $2,370,000.00 in compensatory damages in favor of GEICO, plus costs and interest, along with such other and further relief as this Court deems just, proper, and equitable.

Dated: Jacksonville, Florida
     October 8, 2025

                /s/ Max Gershenoff

                Max Gershenoff (FBN 1038855)
                John P. Marino (FBN 814539)
                Lindsey R. Trowell (FBN 678783)
                Kristen Wenger (FBN 92136)
                Katherine F. Gonzalez (pro hac vice pending)
                RIVKIN RADLER LLP
                1301 Riverplace Blvd., 10th Floor
                Jacksonville, Florida 32207
                Phone: (904) 792-8925
                -and-
                926 RXR Plaza
                Uniondale, New York 11550
                Phone: (516) 357-3000
                Max.Gershenoff@rivkin.com
                John.Marino@rivkin.com
                Lindsey.Trowell@rivkin.com

Kristen.Wenger@rivkin.com
Katherine.Jenkins@rivkin.com
*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO Insurance Company, and GEICO Casualty Co.*